F I L E D
United States Court of Appeals
Tenth Circuit

MAY 30 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LEOLA L. OWENS, individually
and as executrix of the Estate of
Spohn D. Owens,

Plaintiff-Appellant,

v.

THE CONTINENTAL INSURANCE
COMPANY, a foreign insurance
company,

Defendant-Appellee.

No. 99-3201
(D.C. No. 98-CV-1271-MLB)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **KELLY** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Leola L. Owens, individually and as executrix of the Estate of Spohn D. Owens, appeals the district court's summary judgment dismissal of her diversity complaint seeking insurance coverage against defendant, Continental Insurance Company, under two different policies. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

BACKGROUND

On July 3, 1993, Spohn D. Owens was killed in an automobile collision with a vehicle driven by Joshua Kreutzer. Joshua, who was also killed in the accident, was a 12-year old boy. Joshua's parents, Gary and Sherry Kreutzer, owned the vehicle Joshua was driving and had given him permission to drive the vehicle. At the time of the accident, Spohn Owens was a named insured on a liability insurance policy issued by Continental that included underinsured motorist coverage. Coincidentally, the Kreutzers were insured under a farm property insurance policy also issued by Continental. The Kreutzers had automobile liability coverage through the Kansas Farm Bureau.

On January 4, 1994, plaintiff filed suit against the Kreutzers in Kansas federal court, claiming that Joshua negligently operated the motor vehicle and that Gary and Sherry Kreutzer were negligent in entrusting the automobile to Joshua. Plaintiff and the Kreutzers reached a settlement agreement and judgment was entered in that case on November 9, 1995. The terms of the settlement agreement

are set forth in the entry of judgment, which states in relevant part that plaintiff would receive a judgment against the Kreutzers for $850,000, but that this judgment would not constitute a lien on any real or personal property of the Kreutzers and that the judgment against Gary Kreutzer and the estate of Joshua Kreutzer would be "paid solely and exclusively from the proceeds of any insurance policy which may provide coverage to said defendants." Appellant's App. at 95-96.

Plaintiff collected $25,000 from the Farm Bureau. Plaintiff then sought coverage from Continental, seeking underinsured motorist benefits under the Owens' policy, and liability coverage under the Kreutzers' farm property policy. Continental denied coverage under both policies. Plaintiff filed the underlying complaint, seeking an award of insurance benefits under these policies.

Continental moved for summary judgment on both claims. It claimed it was not liable under the Owens' underinsured motorist coverage for two reasons. First, the settlement agreement provided that the judgment was to be paid solely and exclusively from the Kreutzers' insurance policies. Continental asserted that the Kreutzers were clearly not insured under the Owens' underinsured motorist policy, and, thus, plaintiff was precluded by the terms of her settlement agreement from asserting any claim under that policy. Second, Continental asserted that plaintiff had prejudiced its subrogation rights by entering into a settlement

agreement releasing the Kreutzers from any personal liability for the accident without first giving Continental any notice of its settlement agreement, as required by Kan. Stat. Ann. § 40-284(f), or obtaining Continental's consent to settlement, as required by the Owens' insurance policy. With respect to the Kreutzers' farm property policy, Continental claimed it was not liable because that policy excluded coverage for the operation or use of a motor vehicle and excluded coverage for negligent entrustment of a motor vehicle. The district court granted summary judgment in favor of Continental.

## ANALYSIS

### I. Standard of Review

We review the district court's grant of summary judgment *de novo*, applying the same legal standards used by that court. *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment is proper when the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law. *See id.*; Fed. R. Civ. P. 56(c). When, as here, a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state. *See Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). The parties agree that Kansas law governs our interpretation of these policies. We review the district court's determination of

-4-

Kansas law *de novo*. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

## II. Underinsured Motorist Policy

Under Kansas law, an insurer that pays underinsured motorist benefits to its insured is subrogated to any cause of action in tort that the insured may have against the tortfeasor. *See* Kan. Stat. Ann. § 40-287; *Allied Mut. Ins. Co. v. Gordon*, 811 P.2d 1112, 1115 (Kan. 1991). Section 40-287 states that the insurer "shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may thereafter result from the exercise of any rights of recovery of [its insured] against [the tortfeasor] for said bodily injury or death for which payment is made by the insurer." § 40-287. The procedure for enforcing these subrogation rights is set forth in Kan. Stat. Ann. § 40-284(f), which is central to our resolution of this case. Section 40-284(f) provides in relevant part that:

> An underinsured motorist coverage insurer shall have subrogation rights under the provisions of K[an]. S[tat]. A[nn]. [§] 40-287 and amendments thereto. If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured. . . . Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The underinsured motorist coverage insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage. If the underinsured motorist coverage insurer fails to pay

the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage insurer has no right of subrogation for any amount paid under the underinsured motorist coverage.

It is undisputed that Continental did not receive notice of the settlement agreement until July 11, 1996, when it received a copy of the November 9, 1995 journal entry of judgment. It is also undisputed that plaintiff did not obtain Continental's prior consent to the settlement agreement, as required by the Owens' policy.

The district court held that Continental was not liable for underinsured motorist benefits because plaintiff failed to give the notice of settlement required by § 40-284(f). The district court relied upon *Dalke v. Allstate Insurance Co.*, 935 P.2d 1067 (Kan. Ct. App. 1997), which held that an underinsured motorist who failed to provide any notice of a settlement agreement with the tortfeasor to her underinsurance carrier, in accordance with § 40-284(f), forfeited her right to underinsurance benefits, regardless of whether the insurance company was prejudiced by the lack of notice. *See id*. at 1072.

## A.

On appeal, plaintiff first contends that § 40-284(f) and *Dalke* are inapplicable to this case because plaintiff had commenced litigation with the Kreutzers, and had given Continental notice of the commencement of her suit. She argues that once the insured is given notice of the litigation, it can protect its subrogation rights by intervening in the suit.

Plaintiff cites no authority which supports her proposition that § 40-284(f) only applies when the tentative settlement agreement is reached prior to the initiation of a lawsuit. She instead cites *Guillan v. Watts*, 822 P.2d 582, 590 (Kan. 1991), in which the Kansas Supreme Court held that once an underinsured motorist insurance carrier is notified of its insured's suit against the tortfeasor, and elects not to intervene, it is bound by the judgment obtained, including any judgment based upon a settlement agreement establishing the tortfeasor's liability. *Guillan*, however, is inapposite. *Guillan* did not address § 40-284(f) or the subrogation rights of an underinsured motorist insurance carrier. In contrast to the facts here, the insured in *Guillan* complied with the requirement of § 40-284(f), and notified the insurance carrier when the tortfeasor offered to settle for the policy limits. *See id*. at 584. Thus, the insurer had notice and opportunity to intervene. *Guillan* simply does not address a situation presented here, in which the insured fails to provide the statutorily required notice that the

parties have reached a tentative settlement agreement, thereby destroying the insurer's subrogation rights.

There is nothing in the plain language of § 40-284(f) relieving an insured from its obligation to give notice of a tentative settlement agreement because it previously gave notice to the insurer of the commencement of litigation. "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Dalke*, 935 P.2d at 1069 (refusing to require an insurer to show prejudice under § 40-284(f) because the plain language of the statute includes no such requirement). Thus, we conclude that plaintiff's notice to Continental of the commencement of litigation did not relieve her of her obligation under § 40-284(f) to give notice of the tentative settlement agreement.

## B.

Plaintiff cites this court's unpublished decision in *Davis v. Prudential Property & Casualty Insurance Co.*, No. 97-3137, 1998 WL 51734 (10th Cir. Feb. 2, 1998) for the proposition that § 40-284(f) does not provide an absolute defense to coverage based on technical noncompliance. Beyond its limitations under 10th Cir. R. 36.3 as an unpublished decision, *Davis* is distinguishable from the facts of this case because the insured in *Davis* gave the insurer the required notification under § 40-284(f). In contrast, plaintiff here failed to notify

Continental, thus depriving it of any opportunity to make a substituted payment. "This inaction on [plaintiff's] part destroyed [Continental's] subrogation rights." *Dalke*, 935 P.2d at 1072.

C.

Plaintiff next argues that her failure to give Continental notice under § 40-284(f) did not impair its subrogation rights because Continental did not have the right to make substitute payment. Mr. Owens was acting in the scope of his employment when he was killed in the car accident. Plaintiff asserts his employer had subrogation rights under Kan. Stat. Ann. § 44-504(b) because it provided workers' compensation benefits, and she asserts that any attempt by Continental to tender a substitute payment would have been "irrational." Appellant's Br. at 10.

Plaintiff cites us to no authority, nor are we aware of any, that supports this proposition. Under Kansas law, an insured is entitled to recover underinsured motorist benefits which are not duplicative of workers' compensation benefits. *See Kilner v. State Farm Mut. Auto. Ins. Co.*, 847 P.2d 1292, 1299 (1993). It follows that an underinsured motorist carrier that becomes obligated to pay benefits under such circumstances would also be entitled to subrogation rights under § 40-287. Moreover, plaintiff's argument that it would have been "irrational" for Continental to make substitute payment is based on the erroneous

premise that Continental may not deny coverage to her unless it can demonstrate that it was prejudiced by her failure to give the required notice under § 40-284(f). This argument was rejected by the Kansas court in *Dalke, see* 935 P.2d at 1069, which held that an insured's obligation to give the required notice under § 40-284(f) is absolute:

> [Section] 40-284(f) provides that the insurer *shall* have subrogation rights and that the insured *must* notify the insurer by certified mail of the tentative agreement for settlement. It then provides what the insurer may do to preserve its subrogation rights. This is very clear. The legislature was obviously cognizant of and concerned with the preservation of the insurer's right of subrogation and the benefits to the public emanating from the preservation of that right. They commanded the insured with the strong legislative *must* to notify the insurer of any possible settlement and provided that the insurer *shall* have subrogation rights if it substitutes its payment.

*Id*. at 1072. (emphasis in original). Therefore, regardless of whether Mr. Owens' employer also had subrogation rights, plaintiff was obligated to give, and Continental was entitled to receive, notice of the parties' settlement agreement. Under Kansas law, the failure to give such notice under § 40-284(f) dictates a forfeiture of underinsured motorist benefits:

> The failure of [the insured] to notify [the insurer] of her settlement and her release of the tortfeasor, . . . violated her statutory and contractual duty to [the insurer]. In doing so, she cut off [the insurer's] subrogation rights and must be held to have forfeited her right of recovery from [the insurer] under the underinsured motorist provisions of her policy. To hold otherwise would suggest meaningless legislation and would fail to give operation to the obvious intent of the legislature.

*Id.*

D.

Plaintiff next contends the terms of Continental's policy limit application of § 40-284(f) and require proof of prejudice before Continental is entitled to deny coverage on the basis of an unauthorized settlement. Continental's underinsured motorist policy includes a limitation precluding coverage if the insured "accepts a settlement or secures a judgment for a bodily injury claim that prejudices [Continental's] right to recover payment [unless Continental has] given [the insured its] written consent to settle or sue." Appellee's Supp. App. at 89-90. [1]

We need not decide whether Continental has surrendered statutory rights under § 40-284(f), because it is clear that plaintiff's failure to give the required notice of settlement did, in fact, prejudice Continental's subrogation rights. Continental never had the opportunity to make a substituted payment in order to protect its subrogation rights. Moreover, the settlement agreement relieves the Kreutzers, including the estate of Joshua Kreutzer, from any personal liability,

---

[1] Plaintiff contends Continental's consent to settlement or suit provision is void because it is not authorized by § 40-284(f). We need not address this argument because plaintiff never gave notice to Continental of the settlement agreement in the first place; thus whether Continental had the right to consent to the settlement never became an issue.

and states that the judgment could *only* be paid from the Kreutzers' insurance policies. "Subrogation contemplates one person's stepping into the shoes of another . . . ." *Allied*, 811 P.2d at 1120. Because Continental must step into the plaintiff's shoes if it attempts to exercise its subrogation rights, it is barred by the terms of this settlement agreement from collecting from the Kreutzers. Plaintiff's failure to notify Continental of the settlement agreement thus destroyed Continental's opportunity to make a substituted payment and the terms of the settlement agreement destroyed its ability to seek a judgment against the Kreutzers.

## E.

Finally, plaintiff claims that Continental's subrogation rights were not prejudiced because, at the time of the settlement agreement, the statute of limitations had expired in the action against the Kreutzers. Plaintiff had timely filed her suit against the Kreutzers. Because Continental stands in the shoes of its insured, it also succeeds to plaintiff's right to be free from the statute of limitations defense.

In summary, the district court correctly granted summary judgment in favor of Continental on plaintiff's claim for underinsured motorist benefits under the Owens' policy because of plaintiff's failure to give Continental notice of the settlement agreement as required by § 40-284(f). *See Dalke*, 935 P.2d at 1072.

III. Kreutzers' Farm Property Policy

Plaintiff contends the district court erred in ruling that Continental was not obligated to pay benefits under the Kreutzers' farm property policy. The Kreutzers' farm property policy provides liability coverage to the Kreutzers for bodily injury caused by an accident. The policy is not an automobile policy; thus, it excludes coverage for bodily injury which results from the ownership or use of a motor vehicle which is owned or operated, loaned to, or available for the regular use by a "covered person." *See* Appellee's Supp. App. at 165. It is undisputed that Gary, Sherry and Joshua Kreutzer are all covered persons under the policy. The policy also excludes coverage for negligent entrustment of a motor vehicle, stating in relevant part that it does "not cover bodily injury or property damage arising out of . . . the entrustment by a [c]overed [p]erson to any person of . . . any motor vehicle . . . ." *Id*. at 166.

Plaintiff asserted a claim against Joshua Kreutzer for negligent operation of the motor vehicle and against Gary and Sherry Kreutzer for their negligent entrustment of the vehicle to their minor son. Continental's motion for summary judgment relied on both the motor vehicle exclusion and the negligent entrustment exclusion. In response, plaintiff merely made the conclusory assertion that coverage "was not limited by the exclusion set forth in [Continental's] memorandum." Appellant's App. at 67. Plaintiff did not identify which of the

-13-

exclusions she was referring to, nor did she provide any further argument or legal support for her assertion. The district court's order focused only on the motor vehicle exclusion, stating "the property policy excludes coverage for personal and property damages resulting from automobile accidents." *Id.* at 88.

Citing *Upland Mutual Insurance, Inc. v. Noel*, 519 P.2d 737 (Kan. 1974), plaintiff now claims on appeal that "the exclusionary terminology relied upon by Continental is not sufficient to bar coverage for a claim of negligent entrustment." Appellant's Br. at 16. In *Upland*, the Kansas Supreme Court held that a homeowner's policy exclusion for bodily injury or property damage arising from the ownership, maintenance, operation, use, loading, and unloading of automobiles did not exclude coverage for the insured's liability for negligent entrustment of an automobile to another. 519 P.2d at 741-42. In relying on *Upland*, however, plaintiff ignores the separate clause in the Kreutzers' policy expressly precluding coverage for negligent entrustment claims. Plaintiff has not articulated any reason, either before the district court or now on appeal, why the negligent entrustment exclusion does not bar coverage for her negligent entrustment claim. Nor does plaintiff claim the district court erred in ruling the negligence claim against the estate of Joshua Kreutzer was excluded. Thus, the district court correctly granted summary judgment in favor of Continental with respect to the Kreutzers' farm property policy.

-14-

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge